# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, K.J. BRUBAKER, M.C. HOLIFIELD**
**Appellate Military Judges**

## UNITED STATES OF AMERICA

v.

## MICHAEL Z. PABELONA
## CHIEF HOSPITAL CORPSMAN (E-7), U.S. NAVY

### NMCCA 201400244
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 14 February 2014.
**Military Judge:** CAPT J.K. Waits, JAGC, USN.
**Convening Authority:** Commander, Navy Region Europe, Africa, Southwest Asia, Naples, Italy.
**Staff Judge Advocate's Recommendation:** CDR J.A. Link, JAGC, USN.
**For Appellant:** Capt M. Brian Magee, USMC.
**For Appellee:** CDR James E. Carsten; LT James M. Belforti, JAGC, USN.

**15 October 2015**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court-martial, consisting of members with enlisted representation, convicted the appellant of signing a document knowing the information contained therein to be false and larceny, in violation of Articles 107 and 121, Uniform Code of Military Justice, 10 U.S.C §§ 907 and 921. The members sentenced the appellant to total forfeiture of pay and

allowances, a reduction to pay grade E-5, 60 days' restriction, confinement for 60 days, and a $60,000.00 fine that included an enforcement provision of 16 additional months of contingent confinement. The convening authority (CA) approved the adjudged sentence.[1]

On appeal, the appellant alleges four assignments of error: (1) that plain error was committed when the trial counsel engaged in prosecutorial misconduct and the trial defense counsel did not object; (2) that the appellant was subjected to a greater sentence than that awarded at trial as all of his pay and allowances were continued to be withheld after his release from the brig; (3) that said withholding of his pay was a violation of the Fifth and Eighth Amendments of the Constitution; and (4) that he was prejudiced by a comment made by the military judge which caused the members to deliberate less than three hours prior to a four day weekend.[2] After reviewing the record of trial and the pleadings of the parties, we determine the findings and approved sentence to be correct in law and fact. We also find that no errors materially prejudicial to the substantial rights of the appellant occurred. Arts. 59 (a) and 66(c), UCMJ.

\

---

[1] The Government contends that the court lacks jurisdiction as the appellant was not awarded a punitive discharge and the CA approved only 8 months' confinement. The CA took action on 5 June 2014 and approved the sentence as adjudged. The appellant's case was docketed with this court on 1 July 2014. The CA subsequently executed supplemental court-martial orders on 23 and 25 July 2014, and 6 August 2014, ultimately attempting to reduce the additional months of contingent confinement from 16 to six. While the Government argues that through his supplemental court-martial orders the CA ultimately approved only eight months' confinement (to include the contingent confinement if the fine was not paid), we find the three supplemental court-martial orders taken after 1 July 2014 to be nullities as the case had already been docketed with this court. *See* RULE FOR COURTS-MARTIAL 1107(f)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) (allowing modifications of previous actions prior to forwarding the record for review). *See also* the "Background" section under the discussion of assignments of error II and III for further amplification of the CA's actions in this case.

[2] This assignment of error is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We have thoroughly considered this assignment of error and find it to be without merit. *United States v. Clifton*, 35 M.J. 79, 83 (C.M.A. 1992).

## Background

On 3 February 2011, the appellant married YN. After the marriage, the appellant enrolled YN into the Defense Enrollment Eligibility Reporting System and in May 2011 he requested and received authorization to receive Basic Allowance for Housing (BAH) at the "with dependents" rate. It was later determined that this was a sham marriage as the appellant never intended to establish a life with YN, but married her just to collect BAH at the higher rate. The appellant received BAH at the with dependents rate from May 2011 until April 2013.

Additional facts necessary to resolve the appellant's assignments of error are provided below.

## Prosecutorial Misconduct

In his initial assignment of error, the appellant contends that the trial counsel committed prosecutorial misconduct during his closing and rebuttal arguments when he: (1) made disparaging remarks about the appellant; and, (2) interjected his personal opinions on the evidence adduced by both the Government and defense.

*Background*

During closing argument prior to the members deliberating on findings, the trial counsel, in arguing for a finding of guilty on all charges and specifications, referred to the appellant as a "liar" and said that the appellant "sleeps in a bed of lies." Record at 678. The trial counsel also, *inter alia*, referred to the appellant as a "second rate con artist" and "a manipulator and user." *Id*. at 680, 710. *See also* Appellant's brief at 9-11. The trial counsel additionally commented on the sufficiency of the Government's evidence by using words such as "clear" and "obvious" when describing the evidence against the appellant. *Id*. at 672, 677, 682. Finally, the appellant contends that the trial counsel interjected his personal opinion on the defense's evidence by calling the appellant's assertions "ridiculous" and stating that "[the trial counsel] heard a lot of fanciful suggestions" and "a lot of conjecture" and that "[he] didn't hear reasonable doubts". *Id*. at 710. The defense did not object to the trial counsel's closing or rebuttal arguments.

*Law*

Prosecutorial misconduct occurs when a prosecutor "'oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger*, 295 U.S. at 88). "[T]he argument by a trial counsel must be viewed within the context of the entire court-martial. The focus of our inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)).

The failure of the trial defense counsel to object to improper argument by the trial counsel constitutes forfeiture of the issue on appeal absent plain error. RULES FOR COURTS-MARTIAL 919(c) and 1001(g), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). To show plain error, the appellant must persuade this court that: "'(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.'" *United States v. Tunstall*, 72 M.J. 191, 193-94 (C.A.A.F. 2013) (quoting *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011)). The plain error doctrine is "to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Causey*, 37 M.J. 308, 311 (C.M.A. 1993) (citations and internal quotation marks omitted).

*Analysis*

1. Referring to the appellant as a liar/con artist

Calling the appellant a liar is a "dangerous practice" which should be avoided. *United States v. Clifton* 15 M.J. 26, 30 n.5 (C.M.A. 1983). In the present case, the trial counsel used the term "liar" or "lies" multiple times when referring to the misconduct the appellant was accused of committing.

4

We first note that all of the charged offenses alleged dishonest or deceitful conduct by the appellant.[3]  In order to establish a *prima facie* case against the appellant on these charges, the trial counsel had to show that the appellant:

>    (1)  conspired with another to commit a fraud upon the United States;
>
>    (2)  signed an official document knowing it to be false;
>
>    (3)  stole United States currency greater than $500.00; and,
>
>    (4) impeded an investigation by instructing a subordinate to lie to the Naval Criminal Investigative Service agent investigating his misconduct.

As all of these offenses allege dishonesty and/or deceit by the appellant.  For the trial counsel to point out the appellant's dishonesty during closing arguments was hardly overly inflammatory.  We find that the trial counsel's comments were based on a fair reading of the record as it related to proof of these charges, all involving deceit or dishonesty.  We therefore find that if the trial counsel's comments were error, they do not rise to level of plain error.

2. Interjecting personal opinions

It is improper for a trial counsel to interject himself or herself into the proceedings by expressing a personal belief or opinion as such is "a form of unsworn, unchecked testimony and tend[s] to exploit the influence of his office and undermine the objective detachment which should separate a lawyer from the cause for which he argues." *United States v. Horn,* 9 M.J. 429, 430 (C.M.A. 1980).  One of the ways a trial counsel might violate the rule against expressing personal beliefs or opinion is "by offering substantive commentary on the truth or falsity of the testimony and evidence." *United States v. Fletcher* 62 M.J. 175, 180 (C.A.A.F. 2005) (citing *Young*, 470 U.S. at 8).

---

[3] In addition to the charges of which he was found guilty, the appellant was charged with a violation of Article 81, conspiracy to commit fraud, and Article 134, impeding an investigation by directing a subordinate to lie to the Naval Criminal Investigative Service agent investigating the appellant's misconduct.  The members found the appellant not guilty of these offenses.

The appellant cites to the Court of Appeals for the Armed Forces's (CAAF) decision in *Fletcher* to argue that counsel's comments were plain error. In *Fletcher* the trial counsel repeatedly vouched for the credibility of the Government's witnesses and evidence; interjected her personal views of the evidence; and told the members the accused was "guilty." The trial counsel in *Fletcher* also made references to the Government's evidence as "'unassailable,' 'fabulous,' and 'clear'" and described the defense's evidence as "'unbelievable,' 'ridiculous' and 'phony.'" *Id.* at 180. The CAAF found plain error concluding that the trial counsel "repeatedly inserted herself into the proceedings by using the pronouns 'I' and 'we.'" *Id*. at 181. In doing so "[s]he put the authority of the Government and her office behind the prosecution's witnesses . . . ." *Id*.

In the appellant's case, assuming *arguendo* trial counsel's comments constituted error, we find no prejudice. In assessing whether there was prejudice from prosecutorial misconduct, we examine three factors: (1) the severity of the misconduct; (2) curative measures taken; and (3) the strength of the Government's case. *Id.* at 184.

Unlike in *Fletcher*, here the severity was low. In a lengthy four day trial, the appellant points to relatively isolated comments covering a small fraction of the trial and was limited to the trial counsel's summation and rebuttal arguments. The members, who deliberated for almost four hours, made findings that demonstrate their ability to make an independent assessment of the evidence and reach their own conclusions. There is no evidence of the trial counsel failing to abide by the military judge's rulings. Although the instruction came prior to argument by counsel, the military judge instructed the members that counsel's arguments are not evidence. The Government's case for those offenses resulting in a conviction was reasonably strong. Finally, we note that the members acquitted the appellant of two of the four charges he faced at court-martial. Given all this, we are confident in the members' ability to adhere to the military judge's instructions and put trial counsel's comments in their proper context. Said another way, on this record, we have no cause to question the fairness or integrity of the trial and are confident that the members convicted the appellant on the evidence alone. Accordingly, we find this assigned of error to be without merit.

**Assignments of Error II & III**

*Background*

The appellant served his 60 days' confinement from the date his adjudged sentence was announced (14 February 2014) until 2 April 2014.[4] During his period of confinement the appellant continued to receive pay notwithstanding the fact that he was awarded a total forfeiture of all pay and allowances.[5] From February through April 2014, he was paid $23,194.23.[6] Starting in May 2014, the Defense Financial Accounting Service (DFAS) suspended the appellant's account and he did not receive any pay after that date.[7] The CA approved the sentence as adjudged on 5 June 2014 and ordered the appellant to pay the adjudged fine of $60,000.00 by 9 June 2014. The appellant did not pay the adjudged fine by 9 June 2014 and DFAS posted a $60,000.00 debt to his pay account in June 2014.[8] On 1 July 2014, the appellant's case was docketed with this court.

On 15 July 2014, a fine enforcement hearing was held due to the appellant's failure to pay.[9] The hearing officer found that the appellant had paid $10,000.00, had made good faith efforts to pay the fine, and was otherwise indigent. The hearing officer recommended against further confinement based on the appellant's inability to continue payment. Instead, he recommended that the appellant should pay back the remainder of the fine according to a payment schedule.[10] The staff judge advocate concurred that the appellant both made good faith efforts to pay the fine and was indigent, but recommended further confinement of up to sixteen months.

---

[4] *See* Appellant's Motion to Attach filed on 19 Dec 2014, Appellant's Declaration dated 18 Dec 2014 at ¶ 2.

[5] *See* Government's Motion to Attach filed on 27 Apr 2015, Appellant's Leave and Earnings Statements (LES) of February, March and April 2014.

[6] *See id.*

[7] *See* Government's Motion to Attach filed on 27 Apr 2015, Appellant's LES of May 2014.

[8] *See* Government's Motion to Attach filed on 27 Apr 2015, Appellant's LES of June 2014.

[9] *See* Appellant's Brief of 19 Dec 2014, Appendix 3.

[10] *See id.* at ¶ 18.

On 23 July 2014, the CA issued Supplemental Court-Martial Order 1-13 in which he attempted to approve further confinement not to exceed 12 months and remitted the 60 days' restriction and the unpaid portion of the fine, which he believed was $50,000.00 when he issued the supplemental order.[11] The appellant was ordered into confinement the same day.

Between 23 July 2014 and 25 July 2014, the CA learned that the appellant had actually paid $29,529.64 towards his fine vice $10,000.[12] In light of the higher amount paid on the fine, the CA issued a second supplemental order on 25 July 2014, attempted to remit all confinement in excess of 6 months.[13]

The appellant then petitioned this court for a Writ of Habeas Corpus on 28 July 2014. On 6 August 2014, the CA ordered the appellant released from confinement and remitted all further confinement.[14] The appellant returned again to a duty status and was discharged on 28 August 2014 without receiving final pay or an accounting thereof.[15] Based on the appellant's LES records, absent a hardship payment[16] of $6,463.49, DFAS deducted the entire amount of the appellant's paycheck between 1 May 2014 and 28 August 2014, which meant the appellant did not receive any income during that timeframe.[17]

*Law*

The appellant argues that his sentence was in excess of the adjudged sentence. He also argues that his punishment was increased without due process and constituted cruel and unusual punishment. We review these issues *de novo*. *United States v. White,* 54 M.J. 469, 471 (C.A.A.F. 2001).

---

[11] *See* Appellant's Brief at Appendix 5.

[12] *See* Government's Response to Court Order to Produce Documents filed on 15 Apr 2015, Second Supplemental Court-Martial Order No. 1-13 of 25 Jul 14.

[13] *See id.*

[14] *See* Appellant's Brief at Appendix 6.

[15] *See* Appellant's Motion to Attach filed on 19 Dec 2014, Appellant's Declaration dated 18 Dec 14 at ¶ 6.

[16] *See* Government's Motion to Attach filed on 27 Apr 2015, Affidavit of PS1 Anthony Hodge of 14 Apr 2015.

[17] *See* Appellant's Brief at Appendix 7, Appellant's LES of May, June, July, and August.

When an appellant's sentence of "forfeiture of all pay and allowances" does not expressly provide for partial forfeitures following release from confinement, only those forfeitures coterminous with the appellant's confinement will be upheld. *United States v. Stewart*, 62 M.J. 291, 294 (C.A.A.F. 2006). Similarly, where a total forfeiture is adjudged, it shall run until the service member is discharged or returns to a duty status. *Id.* In short, "a service member released from confinement and still in a duty status may not be deprived of more than two-thirds of his or her pay." *Id.* (citing *United States v. Warner*, 25 M.J. 64, 67 (C.M.A. 1987)) (additional citation omitted). Similarly, 37 U.S.C. § 1007(c)(2) requires that pay forfeited as a part of a court-martial sentence or otherwise legally withheld may not reduce the received pay of a service member to less than one-third of the member's monthly pay.

Here, the appellant's adjudged and approved sentence was lawful and appropriate. Nevertheless, the appellant does highlight administrative issues that created confusion surrounding the execution of his sentence. First, on 23 July 2014, the CA believed the appellant had only paid $10,000.00 of his fine and issued Supplemental Court-Martial Order 1-13, remitting "that portion of the fine which ha[d] not yet been paid . . . ." However, the appellant had actually paid $29,529.64 of his fine prior to the CA's initial remittance action. Therefore, when the CA issued Supplemental Court-Martial Order 1-13 on 23 July 15, he actually attempted to remit only $30,470.36 of the $60,000.00 adjudged fine. Second, the members sentenced the appellant to total forfeitures, which were in effect during his period of confinement. DFAS, however, did not execute the total forfeiture provision of the appellant's sentence while the appellant was confined. And finally, the Government paid the appellant over $45,000.00 in BAH that he was not entitled to receive.[18]

While we review an appellant's sentence to determine sentence appropriateness, Congress explicitly delegated matters of pay termination and forfeiture to federal courts that have "particular expertise in dealing with claims for pay," such as the U.S. Court of Federal Claims. *United States v. Allen*, 33 M.J. 209, 215-16 (C.M.A. 1991). The appellant's initial overpayment while in confinement followed by the subsequent suspension of his account were a product of DFAS attempting to both collect debts to the Government and enforce a fine. The

---

[18] *See* Prosecution Exhibit 5.

9

suspension of the appellant's account is a collateral matter with respect to his sentence and his recovery of any pay that is due to him should be resolved in an appropriate civil forum, not in the Court of Criminal Appeals.

The appellant also argues that this deprivation of pay constituted a violation of his Fifth and Eighth Amendment rights. We disagree. As stated above, it was not a part of the Government's punishment to deprive the appellant of all pay and allowances. Furthermore, while the Government may have paid the appellant in a haphazard fashion, he did receive approximately one third of his pay from March 2014 until appellant's discharge in August 2014.[19] Recognizing the consequences of the appellant's sentence did result in financial hardship, they do not amount to Constitutional violations. Accordingly, we decline to grant relief.

## Sentence Appropriateness

While not raised as an assignment of error, our review includes affirming only that much of the sentence appropriate for this offender and these offenses. See Art. 66(c). On this record, we affirm only that part of the sentence that extends to total forfeitures, confinement for 60 days, reduction to pay grade E-5, and fine in the amount of $29,529.64.

## Incorrect Court-Martial Order

We additionally note that the court-martial order does not reflect that the appellant was charged with and acquitted of conspiracy to commit fraud and impeding an investigation. In accordance with R.C.M. 1114(c)(1), the court-martial promulgating order should include, *inter alia*, the pleas and findings of each charge and specification on which the appellant was arraigned, not just those in which the appellant was found guilty. Because service members are entitled to records that correctly reflect the results of court-martial proceedings, we shall order the necessary corrective action. *See United States v. Crumpley*, 49 M.J. 538, 539 (N.M. Ct. Crim. App. 1998).

---

[19] The Government paid the appellant approximately $14,754.85, before taxes, during the months of March and April, and he received a hardship payment of $6,463.49 in June. *See* Government's Motion to Attach filed on 27 Apr 2015, Appellant's LES of March and April 2014 and Affidavit of PS1 Anthony Hodge of 14 Apr 2015. Comparatively, without accounting for 60 days of total forfeitures, one-third of the appellant's pay for the months of March through August would have totaled approximately $14,456.92, before taxes. *See id.*, Appellant's LES of March, April, May, and June, and Appellant's Brief, Appendix 7, Appellant's LES of July and August 2014.

## Conclusion

The findings and the sentence as noted above are affirmed. The supplemental court-martial order shall reflect the pleas and disposition of all charges upon which the appellant was arraigned.

For the Court

R.H. TROIDL
Clerk of Court